**WILSON v. BORDEN.**
No. 5563.

Court of Appeals of the District of Columbia.
Argued Nov. 4, 1932.
Decided Dec. 12, 1932.

Rehearing Denied Dec. 30, 1932.

Rossa F. Downing and Joseph J. Malloy, both of Washington, D. C., for appellant.

H. M. Welch and John R. Daily, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District upon a directed verdict for the defendant at the close of all the evidence in an action for malpractice.

In her declaration plaintiff alleges that she employed the defendant "to skillfully and carefully set and adjust a certain bone or bones of the left arm of the plaintiff, which had been diagnosed by defendant as a fracture at or near the left wrist, and to give the plaintiff the proper, customary, and necessary care, attention, and treatments in connection therewith"; and that the defendant "did then and there negligently, carelessly, unskillfully, and improperly set and adjust the aforesaid broken bone or bones of the plaintiff's left wrist, and did negligently and carelessly remove the splints and bandages therefrom before said bone or bones had been properly set and adjusted, and before said bone had been allowed to heal, and negligently, carelessly, and improperly discharged the plaintiff when he knew, or by the exercise of reasonable care, skill, and prudence should have known, that the said fractured bone or bones had not been properly set and adjusted and had not healed."

Plaintiff testified that she was a clerk in the Interior Department in September, 1926, and is still employed there. On September 6, 1926, she was injured in a collision between a truck and a street car upon which she was a passenger. On the next day she consulted Dr. Edward Larkin, who treated her for about two weeks. Not being satisfied with the treatment, she was receiving, she consulted the defendant (appellee here), but did not tell him that she had been treated by Dr. Larkin. Dr. Borden examined her arm, took an X-ray picture of it, and requested her to return in the afternoon. When she returned in the afternoon he showed her the picture; "the end of the bone was broken off, and he immediately set the arm." He had her return every few days to examine the arm, which was in wooden splints from the elbow to the wrist. "He didn't take a picture of the arm after that at any time." She told the doctor that she had had an accident to her right arm several years previous. Whereupon the doctor told her that she had got the arms mixed; that the fracture shown in the picture in the left arm was an old fracture. "He removed the splints and pronounced the

arm cured. This was about three weeks after the first visit," which occurred on September 16, 1926. Before the accident she was a stenographer and typist. After the accident she was unable to operate a typewriter. The witness identified, and there was introduced in evidence, an X-ray picture of her left wrist taken by defendant. That a year after she had been discharged by Dr. Borden she consulted Dr. Harry Lewis. About two years after her discharge by Dr. Borden she consulted Dr. Leadbetter, and subsequently Dr. Sterling Ruffin. In 1928 she consulted Dr. Thomas Foley, "who treated her, baked and massaged her arm. He didn't discharge her. She simply ceased the visits."

On cross-examination she testified that Dr. Larkin did not treat her for a fractured arm, but for contusions and lacerations; that before she was dismissed by Dr. Borden an X-ray was taken by Drs. Groover, Christie, and Merritt (X-ray experts and surgeons). She consulted Dr. Lewis in September, 1927. He did not treat her. Dr. Borden did not tell her it was an old fracture until he removed the splints.

Dr. George W. Warren testified that he examined the plaintiff twice in June, 1931, and found an old fracture of the left wrist. "Could not tell how old the fracture is. Does not think anybody could tell whether it was five or twenty years old." Upon being shown one of the pictures of the left wrist, he said that there was a fracture "at the end of the ulna." He had no difficulty in determining there was a fracture. Assuming that there was a fracture, "witness testified that they are always put up in splints or a cast, and the bones adjusted properly, and an X-ray taken to see if it is all right." Asked how long, "in the due course of careful and skillful treatment, should those splints have been allowed to remain upon the arm," he answered, "In my opinion it should be from four to six weeks." Thereupon the witness examined the plaintiff's wrist and was asked, "What is that thing on the outside of her arm," and he replied, "That looks like—that is a bunch of tendons, I think, separated from the bone." That the fracture caused the tendons to be detached. That, assuming the splints were put on September 16 and removed October 4, he didn't think the plaintiff should have been discharged as cured.

On cross-examination Dr. Warren testified that there was no evidence of a fracture in the right wrist. "If he had had that X-ray (taken by Dr. Borden, September 16) before him he would have set the arm with splints, or a cast, and kept it there for some time; then before he removed the cast, he would have taken an X-ray to see if it was in condition. * * * That tip which is broken is very small, a little larger than a pea, and he can not tell from X-rays how old that fracture is. From the pictures that Mr. Downing (plaintiff's counsel) showed him (taken in 1926 and 1928) that fracture might have occurred September 6, 1920."

Testifying in rebuttal, this witness was asked, assuming that it was an old fracture, "What, in the course of reasonably skillful practice, should have been done?" He replied, "The arm should have been set and treated for some time." He further testified that an operation might have helped. On cross-examination he was asked, "Would you have operated on this arm?" And answered, "No sir, I would not."

Defendant testified that plaintiff first came to his office on September 16, 1926, stating that she had hurt her arm in a street car accident. There was considerable swelling above the wrist and some thickness of the wrist. After taking an X-ray of her arm, he placed it in splints on the first day she consulted him; took another X-ray later, and removed the splints on October 18, 1926. He took the splints down once a week, and when they were finally removed the wrist looked perfectly normal, with one exception, "and that was at the upper end of the styloid." He had her move her wrist in all directions. He was of the opinion that the X-rays disclosed no fracture as recent as September 6, 1926. "He should say it was a matter of years, or months, certainly not a matter of days." He sent plaintiff to Drs. Groover, Christie, and Merritt, who on October 2, 1926, reported to him that the condition of the wrist probably resulted from an old injury, "probably a Colles' fracture"; that "there is no evidence of recent bone injury." Witness stated that: "A deformity of the lower end of the left radius means some thickening of that radius over and above the normal. It is not very apparent. If you are not an expert you can hardly tell the difference."

Dr. Edward Larkin, who for twenty-one years had specialized in bones and joints, testified that he had known the plaintiff for about fifteen years. She called on him on September 6, 1926, and complained of pains in her left elbow and her left wrist. "The diagnosis was a contusion on the left fore-

arm. He treated her about ten days. Nothing more than bandages and possible fixation."

Dr. Custis Lee Hall, specialist in bone and joint surgery, testified that the X-rays taken September 16, 1926, bore "some evidence of an old injury to the tip of the styloid process of the ulna." From an examination of the X-rays and a statement of the symptoms present, the doctor was of the opinion that no other procedure was called for "than that of a temporary splint until the symptoms had subsided sufficiently to allow function." That his experience has been that it is unwise to leave splints on too long. He usually leaves them on from two to three weeks according to the patient's condition. "Even in a new fracture the tendency and teaching always is not to mobilize (immobilize) the damaged part too long."

Dr. Charles Stanley White, a specialist in surgery, familiar with X-rays, thought the X-ray taken by Dr. Borden in September, 1926, evidenced an old injury; that a recent fracture would show in a much different way.

Dr. Arthur C. Christie, physician and consulting roentgenologist at Mount Alto and Gallinger Hospitals, identified four X-rays that had been taken in his office by Dr. Groover on October 2, 1926. "Witness testified that examining the plates there is evidence of an old fracture of the left wrist—an old Colles' fracture. The right wrist looks normal."

Dr. Guy W. Leadbetter, specialist in orthopedic surgery, familiar with X-rays, expressed the opinion that the X-ray taken September 16, 1926, by Dr. Borden disclosed an old injury. "It could be anywhere from six months to 20 years." The doctor testified that he would have put the arm in splints for a period of perhaps anywhere from ten days to three weeks. "He examined the patient's arm when she came to the office (in 1929) and the function was practically perfect."

Dr. J. C. Talbot, specialist in orthopedic surgery, familiar with X-rays, when shown the plates of the pictures taken September 16, 1926, by Dr. Borden, testified: "This plate has all the appearance of a Colles' fracture, an old healed Colles' fracture with the fracture on the lower end of the radius apparently, and a fracture in the tip of the so-called styloid ulna, and some slight periosteal thickening here down the ulna. It would be certainly a year or more old; how much older it would be impossible to say. It is not a picture of a recent fracture, by any means."

He was asked whether the pictures taken in the office of Drs. Groover, Christie, and Merritt on October 2, 1926, disclosed any injury to the right arm, and said: "No, I see no evidence of injury to the right arm."

 "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. People's Savings Bank v. Bates, 120 U. S. 556, 562, 7 S. Ct. 679, 30 L. Ed. 754; Southern Pacific Company v. Pool, 160 U. S. 438, 440, 16 S. Ct. 338, 40 L. Ed. 485. 'When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither.' Ewing v. Goode (by Taft, Circuit Judge) 78 F. 442, 444." Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720.

In the present case all the medical testimony is to the effect that the injury of which plaintiff complained when she consulted Dr. Borden involved an old Colles' fracture. Dr. Warren, for the plaintiff, testified that fractures "are always put up in splints or a cast." In his opinion the splints in the present case should have been allowed to remain on from four to six weeks. Assuming that the splints were allowed to remain on only three weeks, he did not think plaintiff should have been discharged as cured. The doctor did not state what further treatment plaintiff should have received before being discharged. While he ventured the suggestion that "an operation might have helped her," he admitted that he would not have operated. The nebulous character of Dr. Warren's testimony is apparent. He states that he would have set the arm with splints or a cast and allowed the splints or cast to remain for some time. That is precisely what was done. While in his opinion the splints should have been allowed to remain on from four to six weeks, other surgeons, equally skilled, testified that it would have been unwise to have left the splints on longer than from two to three weeks.

 There is no dispute that the splints were taken down once a week and the arm examined. It also clearly appears that before the splints were finally removed X-ray pictures of the arm were taken by experts in that art, and those pictures were in evidence. When these pictures were taken (October 2, 1926), the splints had been on for more than two weeks. It is significant that there is no testimony that these pictures disclosed any-

thing that would form a basis for a charge of negligence or unskillfulness on the part of the defendant. Plaintiff's evidence may have tended to prove that her arm upon her discharge by defendant was in an unsatisfactory condition, but, assuming that it did, that would establish "neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event." Ewing v. Goode (C. C.) 78 F. 442, 443. All that was required of defendant in undertaking to treat the plaintiff was that he exercise the ordinary care and skill of his profession in the District of Columbia. Cayton v. English, 57 App. D. C. 224, 23 F.(2d) 745; Hazen v. Mullen, 59 App. D. C. 3, 32 F.(2d) 394. Plaintiff alleged lack of skill and negligence. She proved neither.

Plaintiff's counsel propounded the following question to Dr. Warren: "Would any skillful physician have any difficulty in determining that it was a fracture?" The refusal of the court to permit this question to be answered is here assigned as error. The witness had just testified that he had had no difficulty in determining "that it was a fracture," and defendant and several of his expert witnesses testified to the same effect. Plaintiff, therefore, was not prejudiced by the court's ruling.

Judgment affirmed, with costs.

Affirmed.