**UNITED STATES v. PORTER BROTHERS & BIFFLE et al.**

No. 8447.

Circuit Court of Appeals, Fifth Circuit.

March 22, 1938.

Rehearing Denied April 16, 1938.

Justice, of Richmond, Ky., and Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex.

H. M. Muse and R. E. Taylor, both of Wichita Falls, Tex., and E. B. Anderson and J. L. Vertrees, both of Waurika, Okl., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment awarding damages for injuries to cattle in Oklahoma from splenetic fever caused by the alleged negligence of federal agents in dipping, inspecting, and certifying for interstate transportation tick infested cattle shipped from Texas to Oklahoma for pasturage prior to marketing. The items of damages consist of the value of cattle that died from the fever, and of loss in weight, decline in market price, feeding, freight, and other expenses in connection with the cattle that contracted the fever but recovered from the effects of it.

The appellees were authorized to enter this suit against the United States by Private Act No. 142, 73 Congress, approved May 9, 1934, 48 Stat. 1352. Under the act, statutes of limitations and the immunity of the government from suit are expressly waived for the amount of damages resulting to claimants from the negligence of inspectors of the Bureau of Animal Industry in certifying that cattle shipped from Texas to Oklahoma in the year 1919 were free from splenetic fever. Jurisdiction was conferred by said act upon the court below to hear and determine such claims, and to enter a judgment or decree for the amount of such damages and costs, if any, as should be found to be due from the United States to appellees "by reason of the alleged negligence and erroneous certification, upon the same principles and under the same measures of liability as in like cases between private parties."

Pursuant to the terms of the act, and within the time therein prescribed, the appellees filed their single petition in the court below, setting forth all of the facts upon which they based their claim against the United States. It is therein alleged that on or about May 1, 1919, G. J. and J. L. Kieth shipped 180 steers from Fort Worth, Tex., to Otoe, Okl.; that 172 of said steers had been shipped to Fort Worth from tick infested territory and from an area where the Bureau of Animal Industry was main-

Tom DeWolfe, Sp. Asst. to Atty. Gen., J. J. Greenleaf, Sp. Atty., Department of

taining a quarantine against splenetic fever, which disease is produced and communicated by Texas fever ticks (margaropus annulatus); that said Bureau was undertaking to prevent the spreading of said disease beyond said area by making, promulgating, and enforcing regulations which provided that no cattle from the quarantined area, or other cattle which had been exposed to or infested with such ticks, should be moved in interstate commerce except upon compliance with certain requirements made by said Bureau.

After paragraphs 1, 2, 3, 4, and 5 of section 3 of said regulations, in effect during the year 1919, are quoted in full in said petition, it is alleged that all of said 180 steers were placed in the custody and control of the officers, inspectors, and employees of said Bureau for compliance with said regulations; that the owners relied wholly on said federal agents to see that said cattle were free from Texas fever ticks before being shipped to Oklahoma; that said officers knew that said cattle were being shipped for grazing and not for immediate slaughter; knew of the damage that would result if unclean or infested cattle were certified to be free from infection; and that said officers and inspectors were negligent in that they permitted said cattle to be dipped in oil when the regulations required that they be dipped in a solution of arsenic; in that they did not test said dip to determine its strength, when such test would have disclosed that its strength was insufficient to kill fever ticks; in that they did not require a second dipping after an interval of 7 to 12 days, as provided by the regulations; in that they did not properly inspect said cattle after they were dipped in oil, when such an inspection would have disclosed that said cattle were infested with ticks which had not been killed by said dipping; in that said federal agents issued certificates stating that said cattle were properly dipped and inspected and were free of infection from splenetic fever, when they knew that the regulations had not been complied with, and knew, or should have known, that said cattle were still carrying ticks, and were not free of infection; and that all of the damages sustained by petitioners were a direct and proximate result of the negligence of said agents of the United States.

The petition then alleges that, about May 1, 1919, 180 steers of G. J. and J. L. Kieth arrived in Oklahoma from Fort Worth, Tex., and were placed in the same pasture with 747 steers of the claimants, Porter Brothers & Biffle; that said Kieth steers were not free from Texas fever ticks, but were infested therewith, and that they mingled in the same pasture with the 747 steers of Porter Brothers & Biffle, and spread ticks among them; that the presence of said fever ticks was discovered in this pasture about July 23, 1919; that said cattle and pasture were placed under quarantine by officers of said Bureau, and it became necessary for Porter Brothers & Biffle to dip said steers to destroy the ticks; that they were dipped four times, and the cost for labor and material in dipping was approximately $186.75. This and their other losses, including cattle that died of the fever, are itemized as follows:

| | |
|---|---|
| Cost of dipping | $ 186.75 |
| 61 steers died of fever, value | 9760.00 |
| 297 steers sold in fall of 1919 | |
|   Loss in weight | 4158.00 |
|   Decline in market | 14850.00 |
| Freight on 389 steers, Otoe to | |
|   Fort Worth | 778.00 |
| Feeding 389 steers | 9725.00 |
| Water, labor, pen rent, and other | |
|   minor expenses on 389 steers | 2334.00 |
| Sale of 389 steers, decline in | |
|   market | 18672.00 |
| Total | $60463.75 |

Another claimant, Spradling & Porter Brothers, owned 238 steers which mingled in the same Oklahoma pasture with the Kieth steers. Their damages are itemized as follows:

| | |
|---|---|
| Cost of dipping | $ 59.50 |
| 19 steers died of fever, value | 3040.00 |
| Freight on 219 steers, Otoe to | |
|   Fort Worth | 438.00 |
| Feeding 219 steers | 5475.00 |
| Water, labor, pen rent, and other | |
|   minor expenses on 219 steers | 1314.00 |
| Sale of 219 steers, decline in | |
|   market | 10512.00 |
| Total | $20838.50 |

The District Court found for appellees for the full amount claimed, and judgment was entered accordingly. The appellant insists that appellees' right of recovery is limited to erroneous certification by its agents, and that the court erred in

predicating recovery on alleged negligence in dipping and inspecting, as well as upon false or erroneous certification. We do not concur in this view. The act was for the relief of particular persons therein named, and should be liberally construed to carry out the intention of Congress manifested by its passage. Its clearly expressed purpose was to permit the claimants to bring suit in the court below for their alleged damages. The United States did not absolutely promise to pay the amounts claimed, and the action is not one upon a contract. The appellees have brought an action ex delicto, predicated upon the negligence of federal agents, as was evidently intended by Congress. For the purposes of this suit, the government has stripped itself of sovereignty and entered the court as an ordinary litigant, renouncing none of its legal defenses except the bar of limitation by lapse of time, which was expressly waived. The Congress intended to give these claimants their day in court in order to determine whether the alleged damages were caused by the negligence of federal agents and officials. As stated in the committee report recommending passage of the act, they are given the right to "litigate their claims." This right carries with it the burden which rests upon the ordinary litigant in like cases of proving his claim by a preponderance of the evidence. The liability is to be determined upon the same general principles of the law of torts as might be applicable in similar cases between private parties, the right to appeal being given to both "as in similar cases between private persons and corporations." It is in this broad aspect that we have carefully considered the record and briefs.

The Bureau of Animal Industry was created by Congress to suppress contagious diseases among domestic animals, and to prevent the transportation in interstate commerce of animals affected with such diseases; but federal regulations of interstate movements of dipped, inspected, and certified cattle were made subject to such restrictions as might be imposed at destination by state officials. In enforcing its regulations, the agents of the United States did not ordinarily assume exclusive control of the cattle, and there is no evidence that it did so in the matter of the Kieth shipment of 180 steers.

Under the regulations and in this case, the dipping was done by the shipper, who was given the choice of dipping them in oil or in an arsenical solution. This shipper especially requested that he be allowed to dip in Beaumont oil. After obtaining permission from the Secretary of Agriculture, the inspectors acceded to this request. At that time, dipping in Beaumont oil was generally recognized by the government and cattlemen as an efficacious remedy to kill ticks. The oil was supplied by the stockyards company (the agent of the shipper), which also provided laborers to put the cattle through the vat containing the oil. A government inspector supervised the dipping and saw that it was properly done, but the primary duty to dip was upon the owner or shipper. The stockyards, as agent of the owner, then took charge of the cattle and put them in quarantine under government supervision. After dipping, an inspection was made by a federal agent. Only cattle originating in quarantined areas were dipped, and a certificate to the effect that they had been dipped was ordinarily executed by the inspector, which stated the fact and manner of dipping. This certificate constituted the carrier's authority to move the cattle in interstate shipment. Cattle originating in free areas required no dipping, and a certificate was issued to the effect that they had been inspected and found free of any symptoms of Texas fever.

■ In this case, there is no proof of any negligence on the part of federal agents in dipping or inspecting cattle, or in supervising the same, and no proof of any erroneous certificate being issued by them. No certificate was produced in evidence with reference to the 180 steers of G. J. and J. L. Kieth shipped to Otoe, Okl., and the fact that one was issued, as found by the court below, depends upon a presumption that the officers did their duty. We think it is going too far to presume also that an erroneous certificate was issued, solely because ticks were found on the cattle in Oklahoma 2 months and 23 days after they were dipped. This is piling presumption upon presumption, which is not permissible. Furthermore, since these cattle were from a quarantined area, the forms of certificates introduced in evidence refute the inference that the inspectors certified that the cattle were free from Texas fever ticks.

■ Since the government had successfully used the oil dip prior to the instances

herein complained of, and had no reason at that time to think it would be inefficacious, it was not negligence on its part to permit the use of oil in dipping the Kieth cattle; and since there is no proof of negligence in inspection or certification, the appellees failed to make out a prima facie case of negligence on the part of the government agents, unless the doctrine of res ipsa loquitur is applicable.

We agree with appellees that there is nothing in the act which precludes them from being aided in their proof by the doctrine of res ipsa loquitur, the same as if the case were between private parties; but we do not think the facts and circumstances in evidence are sufficient to invoke the doctrine. We agree with the appellant in its contention that the evidence as to the presence of ticks upon the cattle shipped from Texas, or upon the Oklahoma cattle with which they mingled, was unsatisfactory; but conceding, as the court below found, that on July 23, 1919, ticks were discovered in the Oklahoma pasture where the Kieth cattle were brought after being dipped on May 1, 1919, we do not think it follows that the ticks were there as the result of the negligence of the officers and agents of the United States.

The eradication of ticks in infested areas was a gradual process. When properly dipped and inspected, cattle were usually free from tick infestation, but the procedure was not absolutely efficacious. After 28 years, the process of gradual eradication was not complete in 1934. It would be unsound to presume negligence of government agents if a few ticks in an isolated instance survived the dipping and were transported in interstate commerce in 1919, even if the United States had exclusive control of the cattle; but in a case like this, where there was either joint control or exclusive control of the owner and third parties, the error of the presumption seems clear.

The doctrine of res ipsa loquitur is restricted in its application to cases where the defendant had exclusive control of the thing which caused the injury, the party injured was without fault, and the injury was such as in the ordinary course of things would not have occurred if the one having such control had used proper care. In the absence of an explanation in such cases, the court may presume that the injury arose from the defendant's want of care, but the presumption does not reasonably follow unless all other conclusions are fairly excluded. Minneapolis General Electric Co. v. Cronon, 8 Cir., 166 F. 651, 20 L.R.A.,N.S., 816; San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed. 680.

In this case, the thing that caused the injury was the infectious fever tick or the infested steer. The Bureau of Animal Industry did not have exclusive control of either. It merely supervised the dipping and inspection which consumed a very limited time. For over 2 months thereafter the cattle were in the possession of common carriers and private parties. We think the doctrine of res ipsa loquitur has no application to the facts of this case. McKinnon v. Polk, 219 Ala. 167, 121 So. 539; Pfeiffer v. Aue, 53 Tex.Civ.App. 98, 115 S.W. 300; Ewing v. Goode, C.C., 78 F. 442; Garrett et al. v. Southern Ry. Co., 6 Cir., 101 F. 102, 49 L.R.A. 645; Cayton v. English, 57 App.D.C. 224, 23 F.2d 745; Wilson v. Borden, 61 App.D.C. 327, 62 F.2d 866; Carr v. Shifflette, 65 App.D.C. 268, 82 F.2d 874; Elton Cruse, Administrator v. Sabine Transportation Co., 5 Cir., 88 F. 2d 298; Nitroglycerin Case, 15 Wall. 524, 21 L.Ed. 206; Patton v. Texas & Pacific Ry. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L. Ed. 361; New York Central Railroad Company v. Ambrose, 280 U.S. 486, 50 S.Ct. 198, 74 L.Ed. 562.

There being no evidence to support the findings of the District Court that the agents and officials of the United States were negligent in the dipping, inspecting, and certifying of cattle for interstate shipment, its judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.