## CAYTON v. ENGLISH.

Court of Appeals of District of Columbia.

Submitted November 9, 1927.   Decided December 5, 1927.

No. 4556.

1. **Physicians and surgeons** ⟾14(4)—**Physician must exercise ordinary care and skill of profession, considering modern advancement and learning.**

It is duty of physician, in undertaking to treat patient, to exercise ordinary care and skill of his profession, giving due consideration to modern advancement and learning.

2. **Physicians and surgeons** ⟾13—**Physician impliedly agrees that no injury to patient will result from want of proper skill, care, or diligence.**

Physician, undertaking to treat patient, impliedly agrees that no injurious consequences will result from want of proper skill, care, or diligence on his part.

3. **Physicians and surgeons** ⟾18(6)—**One suing physician for injury has burden of proving averments of lack of skill or negligence.**

One seeking to recover against a physician for injury alleged to have been caused by lack of skill or negligence has the burden of proving such averments.

**4. Physicians and surgeons ⊕▬14(2)—Treatment of physician, sued for malpractice, must be tested by rules and principles of his school of medicine.**

A physician or surgeon charged with malpractice is entitled to have his treatment tested by rules and principles of the school of medicine to which he belongs.

**5. Trial ⊕▬296(7)—Instructions as to presumption that physician possessed proper degree of learning, care, and skill, and was not negligent, held not misleading, in view of general charge.**

Granting of prayers for instructions, in malpractice suit, that there was presumption that defendant possessed proper degree of learning, care, and skill in his professional relations with plaintiff, and did not negligently do or omit to do anything, *held* not misleading, in view of full and fair statement in court's general charge.

**6. Evidence ⊕▬119(3)—Physician's report of result of examination to physician referring patient to him held admissible as res gestæ in malpractice suit.**

In malpractice suit against physician, who was to make and transmit report to another physician, on whose recommendation he was consulted by plaintiff, such report, made on day of examination and simply stating result thereof briefly, without reference to treatment administered, *held* admissible as part of res gestæ.

Appeal from Supreme Court of the District of Columbia.

Action by Rosa Cayton against Merton A. English. Judgment for defendant, and plaintiff appeals. Affirmed.

Alex Wolf, Nathan Cayton, and T. M. Wampler, all of Washington, D. C., for appellant.

P. B. Morehouse and R. L. Williams, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment after verdict, in the Supreme Court of the District of Columbia, for the defendant, appellee here, in an action for malpractice.

In her declaration plaintiff alleged that the defendant, on January 20, 1923, represented and held himself out to the public "to be a practitioner especially skilled in the practice of osteopathy"; that, relying upon the representation "that the defendant was skilled as a practitioner of osteopathy," plaintiff employed the defendant to treat her for relief from headache and high blood pressure, and he so treated her; but that, notwithstanding his duty in the premises, he "conducted himself in an unskillful, careless,

and negligent manner, in manipulating and adjusting the body and limbs of plaintiff, and so unskillfully, negligently, and carelessly treated the plaintiff, and the limbs and legs of plaintiff, as to cause a large mass to bulge forward about one inch below the greater trochanter of the plaintiff's left leg, which became and was exceedingly sore, tender, and inflammatory, and by his said negligent treatment caused a diagonal rupture of the fascia lata, through which muscle fibers protruded and bulged," in consequence of which plaintiff suffered great pain and was compelled to undergo a surgical operation for relief. These allegations were followed by proper averments as to damage.

Plaintiff testified that a Maj. Poston, who it appears was a "naturopath by occupation," and whom she had consulted, recommended the defendant, Dr. English, and through him an appointment was made with the doctor for January 20, 1923, on which occasion she received the treatment of which she complains; that in the course of the treatment the defendant so forcibly manipulated her left leg as to cause her great pain and to make her ill. She went home and Dr. Owens was called. When Dr. Owens asked "what the matter was," she told him she had received a treatment that morning at the office of Dr. English, "and was taken very sick while he was giving her the treatment"; that Dr. Owens looked at her leg "and discovered the lump, which was as large as a goose egg." On cross-examination, she denied that when she saw Maj. Poston she had any difficulty with her left leg, stating that she called on him for treatment of high blood pressure only; "that she never told anybody that she had pains anywhere else;" that before Dr. Owens was called an attempt was made to get Dr. English.

Dr. Owens, a regular practicing physician, testified that "he treated Mrs. Cayton [plaintiff] for a condition that he thought was sciatica, a pain in the left leg around the region of the sciatic nerve; that the sciatic nerve starts here (indicating) and runs down in that direction (indicating); that she said she was suffering pain; that he could not recall seeing any protrusion or swelling there." When asked whether a rupture of the fascia lata could come from a severe manipulation of the leg, he replied that he was not qualified to answer.

Dr. Harry S. Lewis, a practicing physician and surgeon (not an osteopath), who saw plaintiff in June of 1924, was of the opinion that forcible manipulation, if sufficiently violent, might result in a rupture of

the fascia lata. The witness further testified that a treatment producing such a result would be improper.

Dr. Harry W. Miller, a surgeon and chief of staff of the Washington Sanitarium and Hospital, who examined plaintiff in February of 1923, when she was admitted to the hospital, was asked whether he had formed any opinion as to how the injury could have occurred, and replied: "No, not particularly; that he formed this opinion that it must have been due to some injury, the result of an injury of some kind by which she had wrenched or twisted her thigh and had ruptured and broken the fibers by some means"; that plaintiff was at the sanitarium about two years before for shortness of breath and high blood pressure. When asked, if, after such a treatment as the evidence had thus far shown to have been given plaintiff, a hernia was found on the fascia lata, "he would say the administering doctor had given the case the care and attention that a physician of ordinary skill and ability practicing in the District of Columbia would have given under all the circumstances, he replied that he did not know how a physician could decide the matter of how an injury occurred. * * * In the first place, injuries of this kind are exceeding rare and we have very little medical data as to just what causes breakage of the fascia lata. I am therefore unable to state even a series of causes that are known to have produced an injury of this kind." He then was asked by the court whether this ought to be a proper manipulation of the limb, and replied: "I know nothing about the manipulation." On cross-examination, the witness testified that he had never before seen a case of the rupture of the fascia lata. Asked as to the degree of force necessary to rupture that portion of the fascia lata here ruptured, he answered: "Well, I cannot tell you in pounds pressure, but only this, that it is a rare condition, evidently, and it would have taken a very marked force, I should think, to produce a tear of that kind." Later he was asked, "You would have to use practically all of your strength to do it?" and replied, "Yes, sir; I should think so; it is a very tough membrane."

Dr. Daniel H. Kress, a regular practicing physician connected with the Washington Sanitarium and Hospital, who examined the plaintiff in February of 1923, was unable to "tell whether the condition found in her was the result of any treatment she had."

Dr. Joseph A. Jeffries, another general practitioner of the District of Columbia, who saw plaintiff about the time of her injury and recommended that she see a surgeon, testified that he was not familiar with osteopathic treatment; "that manipulation is not indicated in allopathic treatment; * * * that he knows nothing about osteopathic treatment."

Dr. Norman C. Glover, the only osteopathic physician called by the plaintiff, testified that "he could not see how an injury could ever follow an adduction or treatment; * * * that he would think it would be impossible for an injury to result to the muscles, the fibers, of the body in any part, the joints, or particularly the fascia lata, following a treatment of a patient in the regular course of osteopathic treatment as practiced by him, and generally recognized by the school of osteopathy; * * * that you cannot injure the fascia lata, no matter how much you stretch the leg, without a complete dislocation of the head of the femur."

Dr. Gerffrey Williams, a surgeon attached to the Washington Sanitarium and Hospital, and who examined plaintiff subsequent to her injury, "had never seen a rupture of the fascia lata similar to this one."

Members of plaintiff's family testified as to her condition prior to and subsequent to her treatment by Dr. English, but it is unnecessary to review their testimony here.

Dr. English, testifying in his own behalf, stated that he was duly registered and qualified to practice in the schools of medicine and osteopathy in the District of Columbia; that he was a graduate of the Massachusetts College of Osteopathy and a post-graduate of the American School of Osteopathy and the Medical Department of George Washington University. His account of the examination and treatment of the plaintiff by him differed very radically from that given by her. He further testified that before treating her he had noticed that she limped; that he told her he would make a written report of her case to Maj. Poston, and accordingly dictated such a report on the day of the examination and sent it to Maj. Poston. Over the objection and exception of the plaintiff, this report was received in evidence.

Maj. Poston, called as a witness for the defendant, testified that plaintiff consulted him on the 15th, 17th, 18th, and 19th of January, preceding her treatment by Dr. English; that she then was 40 or 50 pounds overweight; that she told witness "she was subject to constipation, dizziness, headaches, and severe pain in the left hip; that he did not recall whether she made any statement

to him at that time as to the past duration of those pains in the left hip or knee."

Several other physicians and lay witnesses testified for the defendant, but we do not find it necessary to review their testimony here.

Plaintiff's counsel objected and excepted to the refusal of the court to grant prayers numbered IV and VI, offered by him and reading as follows:

"IV. The court instructs the jury that, if they shall find from the evidence that the defendant, in the course of his treatment of the plaintiff, so forcibly manipulated the left leg of the plaintiff as to produce a tearing of the fascia lata of that leg, they may consider that as evidence of negligence and of lack of ordinary skill and care in the treatment of the plaintiff."

"VI. The court instructs the jury that by the phrase 'preponderance of the evidence' the law does not mean to indicate any particular degree of certainty to which the proof must go; it simply means that the evidence in favor of the plaintiff must to the minds of the jury be more weighty and more satisfactory than the evidence of the defendant upon the same point."

Counsel for the plaintiff also objected and excepted to the granting of certain prayers offered by the defendant, to the effect that the burden of proof was on the plaintiff; that there was a presumption that the defendant possessed the proper degree of learning, care, and skill in his professional relations with the plaintiff, and that he did not negligently do or omit to do anything; that there was no presumption of negligence arising from the mere occurrence of any injury to the plaintiff, but that such negligence must be affirmatively proved.

The court, in a charge to which no exception was noted, after directing attention to the question at issue, said: "Now, to save constant repeating, I will say once and for all that the defendant was bound to have and to use the care, skill, knowledge, and judgment of the ordinary, careful, skillful, learned, and judicious practitioner in the District of Columbia of the osteopathic school;" that the first question for the jury to decide was whether the defendant caused the rupture of the fascia lata as alleged in the declaration; that "the burden is upon the plaintiff to make out by a fair preponderance of the evidence, what she alleges. What she alleges in this respect is that he [defendant] did cause the rupture of this fascia lata. Taking the evidence altogether, do you find that she has established that

point by a fair preponderance of the evidence? If she has not, then there should be a verdict for the defendant in her case, and a verdict for the defendant in Mr. Cayton's case. * * * If you find from the facts that the rupture was caused by Dr. English, and by the other evidence in the case bearing upon the point that it was due to his failure to exercise the care, skill, learning, and judgment I have referred to, then the plaintiff is entitled to recover. If you fail to find that the rupture was occasioned by such negligence and want of care and skill on his part as I have stated before, then there will be a verdict for the defendant, and the same thing would be true in both cases."

[1-3] As pointed out by the learned trial justice, it was the duty of the defendant, in undertaking to treat the plaintiff, to exercise the ordinary care and skill of his profession, giving due consideration to modern advancement and learning, and there was an implied agreement that no injurious consequences would result from want of proper skill, care, or diligence on his part. But one who seeks to recover against a physician, alleging lack of skill or negligence causing injury, has the burden of proving his averments. In Ewing v. Goode (C. C.) 78 F. 442, Judge Taft, now Chief Justice of the United States, in a malpractice case, said: "Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that this want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event."

To the same effect are Levy v. Vaughan, 42 App. D. C. 146; State v. Housekeeper, 70 Md. 162, 171, 16 A. 382, 2 L. R. A. 587, 14 Am. St. Rep. 340; Toy v. Mackintosh, 222 Mass. 430, 110 N. E. 1034, Ann. Cas. 1918C, 1188; Martin v. Courtney, 87 Minn. 197, 201, 91 N. W. 487.

[4] It also is the rule, as in effect stated by the learned trial justice, that a physician or surgeon who is charged with malpractice is entitled to have his treatment tested by the rules and principles of the school of medicine to which he belongs. Patten v. Wiggin, 51 Me. 594, 81 Am. Dec. 593; Force v.

Gregory, 63 Conn. 167, 27 A. 1116, 22 L. R. A. 343, 38 Am. St. Rep. 371; Martin v. Courtney, 75 Minn. 255, 261, 77 N. W. 813; 21 Ruling Case Law, 383.

Counsel for the plaintiff, on the question of burden of proof, cites Davis v. Kerr, 239 Pa. 351, 86 A. 1007, 46 L. R. A. (N. S.) 611. In that case a gauze pad had been left in the body of a patient by the operating surgeon. Under no school of medicine could it be said that the leaving of a gauze pad in a wound was a proper practice. The difference between that case and the case at bar, involving as it does the merits of a treatment of the patient, is apparent.

[5] When considered in the light of the rule we have announced, it is clear that the general charge of the court was correct. As to the contention that the court erred in granting defendant's prayers to the effect that there was a presumption in favor of the defendant, the decisions in State v. Housekeeper, 70 Md. 162, 171, 16 A. 382, 2 L. R. A. 587, 14 Am. St. Rep. 340, and Martin v. Courtney, 87 Minn. 197, 201, 91 N. W. 487, support such a statement of the rule. After all, this is only another way of saying that the burden was on the plaintiff to prove negligence, and, in view of the full and fair statement of the court in the general charge, we are convinced that the jury could not have been misled by these prayers. We may add, however, that such refinements are unnecessary, in our view, and do not make for clarity in the minds of a jury.

Nor do we think it was necessary for the court to elaborate the meaning of burden of proof to a greater extent than in the general charge.

[6] We come now to the contention that the court erred in permitting the defendant to introduce in evidence the report he made to Maj. Poston. There was evidence that the defendant was to make and transmit such a report and also that the report was made on the day of the examination. Moreover, both parties agree that the defendant made an examination of the plaintiff on this occasion, and the report simply states in brief form the result of that examination, without reference to the treatment administered to the plaintiff by the defendant. We are of the view that this report properly may be considered to form a part of the res gestæ, and hence admissible. Taplin v. Clark, 89 Vt. 226, 95 A. 491.

The judgment is affirmed, with costs.

Affirmed.

Submitted November 9, 1927.   Decided December 5, 1927.

Alex Wolf, Nathan Cayton, and T. M. Wampler, all of Washington, D. C., for appellant.

P. B. Morehouse and R. L. Williams, both of Washington, D. C., for appellee.

