394

## HAZEN v. MULLEN.

Court of Appeals of District of Columbia.
Submitted March 7, 1929. Decided
April 1, 1929.

No. 4724.

Benjamin S. Minor, H. Prescott Gatley, Arthur P. Drury, and Charles W. Arth, all of Washington, D. C., for appellant.

T. M. Wampler, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District in favor of the plaintiff in the sum of $15,000 in an action against the defendant and another for malpractice in administering X-ray treatments.

The declaration is in two counts, in the first of which it is alleged that the defendants "negligently and without reasonable skill or care, too frequently applied and used the said X-ray apparatus upon the plaintiff, and excessively exposed the plaintiff to X-ray treatments and to the influence and effect of the said X-ray." In the second count it is alleged that the defendants "negligently and carelessly subjected the plaintiff to exposure and to the influence of the said X-rays for an excessive length of time, and negligently and carelessly subjected the said plaintiff to exposure and to the influence of X-rays too frequently, and failed and neglected to use reasonable care and skill and ability in and about the treatment administered to the plaintiff."

In February of 1920 the plaintiff, Miss Mullen, consulted the defendant, Dr. Hazen. She was then suffering with a pronounced case of tubercular adenitis of the lymph nodes, a tubercular condition of the glands on both sides of the neck, running down to the middle of the clavicle and in the armpits. It clearly appears that she was in a serious condition, and that unless relief was afforded her, very serious consequences might have resulted. As one physician testified: "In the absence of treatment the usual result in such a case is either a breakdown of the affected glands and a long continued discharge through open sinuses, or rupture into the blood vessels with general dissemination of tuberculosis resulting ultimately in death." A surgical operation to remove the glands would have required an incision almost from the ear right down to the middle of the clavicle, with the complete cleaning out of everything in the neck on both sides, and in addition to that would have required operation in both armpits, and probably the operation would have extended from either the armpit up to the clavicle or from the clavicle down, or both, so as to get out the intervening glands.

As a result of the interview, Dr. Hazen undertook the treatment of Miss Mullen. These treatments, commencing in February, continued until some time in November, 1920. One side of the neck would be exposed every other week. The treatments resulted in a complete cure.

Some time after the last treatment, the condition known as telangiectasis, or X-ray burn, appeared on plaintiff's neck, and it is of this she complains.

In 1923, after the appearance of the telangiectasis, plaintiff consulted a physician in New York, who gave her two radium treatments for the trouble.

Dr. Carr was the only physician to testify for the plaintiff. The doctor qualified as an X-ray specialist, and testified that while standard books on X-ray lay down rules with respect to the technique in the use of X-ray machines, "each man who is doing this work would probably arrive at his own personal technique." After explaining that the reddishness, characterized as a recent sunburn,

following exposure to the influence of the rays is called an X-ray erythema, the doctor was asked whether in his opinion a man possessing and exercising ordinary skill and ability in this particular line would reduce the length of exposure after the appearance of an erythema and while the erythema was still present and apparent, to which he replied that it would depend primarily on the degree of the erythema. A hypothetical case then was stated to the doctor, upon the assumption that plaintiff's evidence tended to show that exposures were continued every two weeks "after the appearance of the reddish glow characterized as a recent sunburn," and he was asked, "Would you say that the person I have described exercised ordinary skill and ability in treating that patient?" To which he replied, "I don't think he would."

Under cross-examination the witness stated that there are degrees of sunburn, and that "each man unquestionably develops certain differences, minor differences in treatment. I don't suppose any two men in the business do everything just the same. There are certain differences in the various textbooks. The factors employed in the giving of X-ray treatments depend entirely upon what the treatment is given for. The treatment and dosage and distance and duration of treatment in the case of tubercular adenitis would be different from many other troubles. I know of X-ray treatments being given where there has been an erythema. * * * That is largely a question of judgment on the part of the person giving the treatment. * * * Whether they would give a subsequent treatment or not would depend upon the man's judgment, of course, upon the exercise of judgment upon his part; regardless of technique, the erythema following a dose of X-ray probably is the one more or less constant factor that controls the man's subsequent dosage, and that of course does depend on his judgment, and that is the only way it can be determined. It is a matter of judgment in the light of the skill possessed by the man who is giving the treatment. I do not know anything about the treatment in this case."

It was "conceded and agreed by both parties that at the time of the treatment of the plaintiff by the defendants, the defendants were possessed of the degree of skill and ability in their particular line of work possessed by men of that class in Washington, ordinary degree of skill and ability."

Dr. Carr, as well as the expert witnesses for the defendant, agreed that X-ray treatment was the recognized treatment for tubercular glands.

Several physicians who qualified as expert X-ray practitioners testified for the defendants that telangiectasis "may follow X-ray treatment notwithstanding the fact that the highest degree of skill and care has been exercised in the giving of such treatment," and that there is no method known to the medical profession of foretelling whether or not telangiectasis may follow such treatment. This testimony was not met by the plaintiff. These witnesses agreed that the treatments administered to plaintiff as shown by the record kept by Dr. Hazen were proper and in accordance with the best knowledge and skill possessed by men engaged in X-ray work in the District at the time.

Dr. Christie testified that: "In 1920 it was considered proper treatment to produce an erythema in the case of tubercular adenitis. The character of X-ray treatments given depends entirely on the nature of the disease or trouble with which the patient is suffering. The course of treatment for tubercular adenitis would vary greatly from that to be given a mild case of acne, it would be entirely different. When I examined plaintiff in 1925 (after the treatments) I could not discover any enlarged glands at all; I would not have known that she had had any tubercular glands at any time; there was no evidence of their presence whatever."

Dr. Truman Abbe testified that: "The question as to whether an exposure should be made under any conditions, erythema or no erythema, is straight up to the man who is giving the treatment, considering the results which he is hoping to produce."

Dr. Hazen received his bachelor's degree at Johns Hopkins in 1902, and the degree of doctor of medicine at the same institution in 1906; had been connected with Freedmen's, Georgetown, Columbia, and Gallinger Hospitals; and received an honorary master's degree from Georgetown. He had specialized in skin diseases, particularly X-ray in relation to skin diseases. Had been a contributor to medical works on X-ray treatments, and had specialized in X-ray work since 1909 continuously. Before graduating from the medical school he spent a year in the tuberculosis dispensary, and after graduating spent two years in the tuberculosis dispensary of Johns Hopkins.

Dr. Hazen testified that in giving the X-ray treatments to plaintiff he exercised his best judgment in the light of the skill and ability which he possessed at that time. He further testified: "As to whether I could

have afforded her greater protection by extending the length of time between exposure of the same area, that again is entirely and absolutely a question of individual judgment. It was a question based largely upon the condition of plaintiff, and I felt that the chances for the graveyard were very, very good, if the treatment were not pushed and the intervals were not made short."

Witnesses for the defendants expressed the opinion that treatment of telangiectasis with radium following X-ray treatment was improper, and would be likely to increase the telangiectasis.

In Cayton v. English, 57 App. D. C. 324, 23 F.(2d) 745, a malpractice case, we said that it is the duty of a physician in undertaking to treat a patient to exercise the ordinary care and skill of his profession, giving due consideration to modern advancement and learning, and that there is an implied agreement that no injurious consequences will result from want of such proper skill, care, and diligence; that one who seeks to recover against a physician, alleging lack of skill or negligence, has the burden of proving his averments. In the Cayton Case we quoted from the opinion of Judge Taft, now Chief Justice of the United States, in a malpractice case (Ewing v. Goode [C. C.] 78 F. 442), in which he said: "Before the plaintiff can recover she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that this want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event."

In the present case it is admitted that Dr. Hazen possessed requisite skill, so that the only question is whether he was guilty of negligence in his treatment of plaintiff, or, in the words of the declaration, whether he "negligently and carelessly subjected the plaintiff to exposure and to the influence of the said X-rays for an excessive length of time, and negligently and carelessly subjected the said plaintiff to exposure and to the influence of X-rays too frequently." In our view, there is no evidence in this record reasonably justifying such a conclusion. When Miss Mullen consulted Dr. Hazen she was in a very serious condition, and the doctor was bound to take the seriousness of her condition into consideration in determining the course of treatment to be given her. Dr. Carr, plaintiff's only expert witness, frankly stated that the frequency of X-ray exposures would depend upon the judgment of the physician administering them; "regardless of technique, the erythema following a dose of X-ray probably is the one more or less constant factor that controls the man's subsequent dosage, and that of course does depend upon his judgment, and that is the only way it can be determined." While Dr. Carr, in answer to a hypothetical question, expressed the opinion that the treatment accorded plaintiff was improper, it is perfectly apparent from his other testimony that physicians equally skilled, in the exercise of their best judgment, might have administered the same treatment which was given by Dr. Hazen. In other words, Dr. Carr admits that it is a question for the exercise of the judgment of the particular physician in the light of existing conditions, and that Dr. Carr's judgment differs from that of Dr. Hazen and his expert witnesses.

"A case of malpractice cannot be proven by the testimony of a few physicians or surgeons that they would have used some other treatment than the one used, in the absence of testimony from which it can be inferred that the defendant failed to give to the case that skill and care ordinarily possessed and exercised by others in the profession." Gramaldi v. Zeglio, 3 N. J. Misc. R. 669, 129 A. 475. See, also, Williams v. Poppleton, 3 Or. 139; MacKenzie v. Carman, 103 App. Div. 246, 92 N. Y. S. 1063.

It is conceded that Dr. Hazen possessed the requisite degree of skill and ability; that X-ray treatment was the recognized treatment for tubercular glands; it clearly appears that the length of time between exposures of the same area depends upon existing conditions and the judgment of the operator; that telangiectasis may occur even if the highest skill is exercised in the treatment. As already observed, there is no evidence upon which it reasonably may be found that Dr. Hazen did not exercise his best judgment and ability in treating the plaintiff, or that in his treatment of the plaintiff he failed to exercise the care and skill ordinarily possessed and exercised by others in the profession.

The judgment is reversed, with costs, and the cause remanded.

Reversed.