## CRIST v. WHITE.
### No. 5716.

Court of Appeals of the District of Columbia. Decided June 30, 1933.

T. Morris Wampler and J. C. Turco, both of Washington, D. C., for appellant.

H. Mason Welch and P. B. Morehouse, both of Washington, D. C., for appellee.

Before ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The appellant, as plaintiff below, sued the defendant, a distinguished physician and surgeon, for damages.

The declaration was in two counts—the first charging a breach of contract to properly perform an operation upon the plaintiff's leg; the second was in tort and alleged a breach of the defendant's duty to exercise reasonable and ordinary skill in performing the operation.

On November 4, 1926, the plaintiff was struck by a motorcycle, causing an injury to her left leg below the knee.

While it would seem from the record that the defendant attended her then, that is neither clear nor important, for the declaration in both counts charges and the evidence tends to prove, that, as a result of his examination of X-ray photographs taken on February 19, 1927, the defendant on February 26th operated upon the leg and placed it in a cast.

That cast was subsequently removed by the defendant, another substituted, and the latter removed in April.

The plaintiff asserts that thereafter until February 1928, when her leg was again operated upon in Baltimore by another surgeon, she suffered great pain and inconvenience which she attributed to the manner in which the defendant performed his operation a year before.

At the conclusion of her case the court directed a verdict for the defendant, which action is the basis of the third assignment of error; the first and second being to rulings on the evidence.

■ Exceptions were taken to the refusal of the court to permit the plaintiff to testify that the defendant examined X-ray photographs of the injured leg taken in May and October 1927; what defendant said to plaintiff in regard to them; that plaintiff during that time had shown defendant the movement of the bones of her leg; and what he said about her condition.

This tender of evidence was not made to prove an admission of fault by defendant, but, on the contrary, to show that he asserted progress in the cure, and we are of opinion that for this purpose it should have been received.

The case was tried in March 1932, when the plaintiff testified she was 24 years old; that on November 4, 1926, she was struck by a motorcycle, breaking both the tibia and fibula of her left leg; that the defendant attended her, undertook to treat her, and placed her leg in a plaster cast; that in the following February she consulted defendant because there was no improvement in her leg; that he had an X-ray photograph taken on February 19th, and on February 26th operated upon the leg at a hospital in Washington; that, when plaintiff recovered from the anæsthetic, she had a cast upon her leg, which the defendant later removed and replaced by a smaller cast; and that the latter was removed by the defendant in April, 1927.

She further testified that during the following summer the leg was very small and deformed; that a large knot appeared on one side thereof; that when she stretched it the bones could be seen to move and stick up; that she could move the edges of the bones with her hand, and there appeared to be no union at all; that walking was very painful and caused a feeling as if the bones would come through the skin, with a slipping and grinding sensation in the leg; that early in 1928 she consulted another physician, Dr. Huff, who, after examining her leg, advised her to see Dr. R. Tunstall Taylor in Baltimore; that on February 2, 1928, she consulted Dr. Taylor, who immediately sent her to a hospital in Baltimore, where he operated on her leg the next day; that when she recovered from the anæsthetic she had on a heavy cast extending from her toes to her hip, while the one the defendant put on after his operation extended from the toes to the top of the knee; that she could bend her knee slightly in Dr. White's cast, but not at all in Dr. Taylor's; about six weeks after his operation Dr. Taylor removed the bone clamp, and the heavy cast, and put on another cast, which he removed after three or four weeks; and that plaintiff then walked out of his office and had no further trouble of any kind with her leg thereafter.

At the time of the trial Dr. Taylor was dead, and the only medical testimony of importance here came from Dr. Huff, whose examination had caused him to send the plaintiff to Dr. Taylor.

Dr. Huff, as an expert, was asked a hypothetical question containing a narration of the facts of plaintiff's case, including a consideration of the X-ray photographs in evidence, and calling for his opinion as to whether the physician who performed the operation on February 26, 1927, had exercised such ordinary skill and ability as was usually exercised by professional men in such cases; and he answered, "No."

There followed much cross-examination by counsel, with some interrogation by the court, but Dr. Huff's opinion remained in the case at the time the verdict was directed.

■ While no presumption of want of skill or care ordinarily arises from the fact that

professional treatment is unsuccessful, in this case there was more than that.

For the undisputed evidence shows that the plaintiff was 18 years old at the time of her injury; in good health; had speedily recovered from a fractured collar bone several years before; was operated upon in February, 1927, by the defendant, when both bones in her lower leg were fractured and set; that from time to time thereafter she consulted defendant; that she followed instructions; that almost a year after the operation the leg was not healed; that another surgeon then operated upon the leg, and in three months it was healed.

There was also medical testimony tending to show that shortly before the second operation there was nonunion of the large bone of the leg, which should have healed in eight weeks at most after the first operation, and that the failure of union might be due to poor fixation of the bones in the operation, which is a frequent cause of such a condition, or it might be due to conditions of ill health in the patient, which is a less frequent cause; while both the plaintiff and her mother had testified that the health of the plaintiff was good. There was also in evidence a number of X-ray photographs taken at different times and explained as showing nonunion of the bones.

From February, 1927, when the defendant operated, until the latter part of 1927, the plaintiff relied entirely upon the defendant in the matter, while at the time of the operation she was, of course, under an anæsthetic, so that her case is inherently difficult of proof.

And, while the failure of the operation alone creates no presumption of lack of skill or care, it is a circumstance entitled to some consideration, when coupled with the other testimony. As we said in Sweeney v. Erving:

"There are exceptional cases where the result of an operation performed, if unexplained, may warrant an inference of negligence.

"Thus, evidence showing that after a broken ankle was reset, the ankle was crooked and the ankle joint stiff, tends to prove negligence on the part of the physician in setting the ankle, which evidence should be submitted to the jury." 35 App. D. C. 62, 43 L. R. A. (N. S.) 734.

Whether the result of the operation in the present case, without other evidence, would have brought it within this exception we are not called upon to say, because there was other evidence tending to the same conclusion, and we are of opinion that the order directing the verdict for the defendant was erroneous, and that the judgment thereupon entered must be reversed. Gunning v. Cooley, 281 U. S. 94, 50 S. Ct. 231, 74 L. Ed. 720; Texas & Pacific Railway Co. v. Cox, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; Gardner v. R. R., 150 U. S. 349, 14 S. Ct. 140, 37 L. Ed. 1107; B. & O. R. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; Richmond & Danville R. R. Co. v. Powers, 149 U. S. 43, 13 S. Ct. 748, 37 L. Ed. 642; Adams v. Washington & G. R. R. Co., 9 App. D. C. 26; Glaria v. Washington Southern R. R. Co., 30 App. D. C. 559; Catholic University v. Waggaman, 32 App. D. C. 307; Faucett v. Bergmann, 57 App. D. C. 290, 22 F.(2d) 718; and Vergeldt v. Hartzell (C. C. A.) 1 F.(2d) 633.

The judgment is reversed, and the case remanded for a new trial.

Mr. Chief Justice MARTIN took no part in the consideration or decision of this case.