**BYROM et al. v. EASTERN DISPENSARY AND CASUALTY HOSPITAL, et al.**

**No. 8172.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 9, 1943.

Decided June 14, 1943.

Mr. Leroy S. Bendheim, of Washington, D. C., with whom Messrs. Lawrence Koenigsberger and Lewis Jacobs, both of Washington, D. C., were on the brief, for appellants. Messrs. Morris Simon and Eugene Young, both of Washington, D. C., also entered appearances for appellants.

Mr. H. Mason Welch, of Washington, D. C., with whom Messrs. John Ryan Daily and J. Harry Welch, both of Washington, D. C., were on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

PER CURIAM.

This is an action to recover damages for malpractice brought against appellee hospital and Dr. Young, the attending physician. Appellant Callie Byrom sustained a fracture of her wrist as the result of a fall. She went to the hospital where she received first-aid and returned to her home. As a result of continued pain she was the same evening taken back to the hospital for further treatment. On the day following X-ray pictures of the fractured wrist were taken and disclosed a comminuted Colles fracture. Dr. Young, who was officially connected with the hospital, administered an anesthetic and, with the aid of a fluoroscope, set the wrist and placed the arm in a cast. At the end of about three weeks Dr. Braden, in charge of the case in the absence of Dr. Young, removed the top part of the cast. Mrs. Byrom testified the arm then appeared withery and small and parts of bone protruded under the skin. Upon Dr. Young's return the remainder of the cast was removed, but the swelling did not go down, there was stiffness in the wrist joint, and the arm pained Mrs. Byrom severely. She said that the doctor, observing the condition, appeared excited, but that when she inquired of him what was wrong, he replied nothing, and advised her to go home and bathe the arm in hot Epsom salts and to massage it with cocoa butter. This she did, all the while suffering considerable pain. She said that on one occasion she asked another hospital doctor for an X-ray, but was advised against it, and that on another, when she returned to the hospital and pressure was applied to the arm, the pain was so great she could not stand it, and Dr. Young remarked that it would be a grand thing if the arm were broken again, but the course of treatment was not altered. After this incident Mrs. Byrom did not go back to Dr. Young, nor to the hospital, but went to Dr. Smiler, who had an X-ray made of her arm. This showed that union had not been accomplished because the bone fragments were not in apposition. Dr. Smiler performed two operations. As a result of these, and by heat and massage treatments, there was a lessening of the pain and a more satisfactory use of the arm, but the fracture itself was never completely healed.

On the trial appellees introduced the testimony of three qualified experts who, in answer to hypothetical questions embracing the testimony of Dr. Young as to

his treatment, said that his method of treatment corresponded generally with good surgical practice in the District of Columbia.

At the conclusion of all the evidence the District Judge, over appellants' objection, instructed the jury as follows: "* * * If you find from the testimony of the experts in this case that the treatment and conduct of defendant, Dr. Young, was in keeping with good and approved practice among physicians of like qualifications and experience in the District of Columbia at that time, then your verdict must be for the defendant." We think this instruction went a little too far. It in effect told the jury to ignore all of the evidence in the case save that of the doctors who testified as experts, and to find for appellees if the treatment administered by Dr. Young squared with District of Columbia practice.

Unquestionably only experts are qualified to express an intelligent opinion as to what constitutes the proper method of treatment of a serious bone injury. But that their evidence should be accepted in exclusion of other evidence of conditions and results is contrary to the applicable rule, both in this jurisdiction and elsewhere. As was said in Cornwell v. Sleicher, 119 Wash. 573, 205 P. 1059, 1061, the proposition that experts alone are qualified to testify as to the manner of treatment of a patient is "sound only when soundly applied," and "that there must be, in the nature of things, many instances where the facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skilled in the particular science to show unskillful and negligent treatment."

In accordance with this view we said, by way of illustration, in Sweeney v. Erving, 35 App.D.C. 57, 43 L.R.A.,N.S., 734, that evidence that after a broken ankle was reset it was crooked and the ankle joint stiff, is admissible and should be submitted to the jury as tending to prove negligence in setting the ankle. And in Christie v. Callahan, 75 U.S.App.D.C. 133, 124 F.2d 825, in a suit for injuries alleged to have been caused by the improper use of X-ray, we rejected the view that negligence in treatment might be shown only by the testimony of X-ray specialists, and held that the jury was entitled to consider the character of the injury and the statements of the attending physician in connection with the evidence of experts. See also Crist v. White, 62 App.D.C. 269, 66 F.2d 795; Grubb v. Groover, 62 App.D.C. 305, 67 F.2d 511; Weisenberg v. Hazen, 63 App.D.C. 398, 73 F.2d 318.

We think the principles of these cases are applicable here. The theory of appellants' case, as we understand it, is not that Dr. Young failed to set the broken wrist in accordance with established medical practice. Rather it is that after the cast had been removed and it appeared that the bone or bones of the wrist had slipped or had never been placed in proper position, he failed to take any further steps. Mrs. Byrom's testimony that Dr. Young looked alarmed when the cast was removed, and that, at another time, he remarked that it would be well if the wrist were rebroken, coupled with the fact that the bones were visibly protruding and obviously out of alignment, is evidence, if believed, tending to show that the first operation had failed. And admittedly Dr. Young neither attempted through an X-ray to determine the trouble, nor by an operation to remedy it. Whether this evidence is true is not for us to say. It is enough that it was introduced. That being so, it should have been considered by the jury for whatever it was worth. Consequently, the instruction that the jury was to be guided only by the testimony of experts was, we think, incorrect.

Reversed.

Justice VINSON sat during the argument of this case, concurred in the result when it was considered in conference, but resigned from the Court before the opinion was prepared.