### WINSTEAD v. HILDENBRAND.

No. 9140.

United States Court of Appeals
District of Columbia.

Argued May 22, 1946.

Decided Dec. 16, 1946.

Rehearing Denied Jan. 13, 1947.

---

Mr. Maxwell A. Ostrow, of Washington, D. C., with whom Mr. Wesley E. McDonald, of Washington, D. C., was on the brief, for appellant.

Mr. J. Harry Welch, of Washington, D. C., with whom Mr. H. Mason Welch, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a verdict and judgment of the District Court of the United States for the District of Columbia in favor of appellee, defendant below, on an action brought by appellant, plaintiff below, to recover damages for negligence and malpractice resulting in his total blindness.

Appellant suffered from syphilis, contracted prior to 1941. On October 9, 1941, he was admitted to the Georgetown Hospital Night Clinic. From November 23, 1942, to February 1, 1943, he received seven injections of tryparsamide, an arsenical specific used in the treatment of cerebrospinal syphilis. Previous to these treatments, appellant had received a complete neurological examination which included a thorough examination of the eyes. No reason was then disclosed why the arsenical treatment should not begin.

Appellant was referred to appellee, a brother-in-law of the doctor making the reference, in February 1943, for fever therapy treatments with recommendation that tryparsamide injections be continued. Appellee began administering the fever treatments and continued the injections. He did not then make an independent examination of appellant's eyes but relied solely on the abstract record received from Georgetown Hospital. The evidence further shows that at no time thereafter did he examine appellant's eyes, except as he said, to "look at them" when the patient was in the fever cabinet. After the ninth treatment appellant became ill and was removed to the Garfield Hospital on April 18, 1943, where he was found to be blind. Appellee admits that he was neither experienced nor expert in the use and administration of tryparsamide and it is conceded that the treatment was extremely dangerous.

We believe there was sufficient evidence presented in the case to justify an instruction to the jury that they might consider whether or not the failure of the defendant to give continuous eye examinations during the treatment was negligence and that the court erred in refusing to instruct the jury on this phase of the case.

Expert witnesses for both plaintiff and defendant testified on this matter. In response to a question as to whether, in his opinion, while a person is being treated for syphilis by fever cabinet therapy and tryparsamide, a careful and close examination or watch on the eyes should be kept during the treatment, Dr. Gillick answered yes. Dr. Calloway testified that the drug should be used cautiously. The testimony of Dr. Teichmann, a witness for defendant, was as follows:

"Q. Are there any special precautions to be taken in the use of tryparsamide? A. The eyes should be watched. The patient should be asked and occasionally the fundi should be examined, the eye-grounds should be examined, and the fields examined."

"Q. And how should they be examined, Doctor? A. We have a machine in the clinic for that, and one of the internes takes the patient, and he has to point out certain points on a dial. That is a routine examination."

"Q. So your testimony would be that precautions should be taken and are nec-

essary in the avoidance of possible ocular disturbances in the use of tryparsamide? A. Why certainly."

This evidence, we believe, was sufficient to warrant the submission to the jury, under a proper instruction, the question whether or not the defendant's failure to exercise a continuous examination over the plaintiff's eyes constituted negligence. The court's refusal to do so we think was error.

■ Since we have found the evidence sufficient to take the case to the jury on a question of negligence, the question remains whether negligence being assumed there was sufficient evidence of proximate cause to justify the submission of the case to the jury.

The evidence showed that it was possible that the blindness might have been caused either by the syphilis itself or by the treatment, and that one of the first definite signs that tryparsamide is affecting the eyes is a sensation of light flashing and when this occurs an immediate examination should be made before continuing the use of the drug. In the course of the trial plaintiff testified that he told the nurse, whom the evidence shows defendant had placed in charge of the administration of the treatment, that he had experienced these light flashes. It is true that the nurse denied that he had made such a statement to her, but the jury were entitled to determine the truth as between the two witnesses, and if the jury accepted plaintiff's statement in this respect, some ground would thereby have been established to justify the jury in reaching the conclusion that the proximate cause of plaintiff's blindness was the continued use of the drug. In this view we cannot say, as counsel for defendant insists, that there was a total lack of evidence of proximate cause.

The judgment is therefore reversed and the case remanded with instructions to grant a new trial.

Reversed.

### On Petition for Rehearing.

PER CURIAM.

We have considered the petition and we find nothing in it which in our opinion would justify a rehearing.

■ We note however, the statement of counsel that while we held it was error for the lower court to refuse an instruction on "continuous eye examination", such an instruction was never requested by plaintiff in the trial. We think this is a misconception of the record. At page 294 the record shows the following:

"Mr. Ostrow: Your Honor, there is only one thing that disturbs me in your charge— I don't want to take an exception.

"The Court: Go ahead.

"Mr. Ostrow: There is evidence all through this case that in the treatment of tryparsamide the eyes must be closely observed.

"The Court: I ruled on that. I gave you my reasons this morning. I did think the evidence warranted submitting that, that is, I did when I left here last night, but I have reviewed the testimony and read my notes, and arrived at the conclusion that it was not material to submit that on that kind of evidence.

"Mr. Ostrow: I thought it was important and on that ground I would like to take an exception."

Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, does not, as counsel insists, make this request for instructions invalid because not in writing. Counsel for plaintiff having called the attention of the court to his desire to have the jury instructed along the lines set out above, and the judge having twice refused such instruction, it would have been a vain and senseless thing to have gone through the process of then reducing the request to writing.

Counsel's second point is that the evidence does not justify an instruction on continuous eye examinations. But in the opinion we pointed out the testimony which we considered sufficient to justify a jury in finding that continuous eye examinations were necessary to conform to the standard of care and skill exercised by physicians in good standing in this locality. We have re-examined the testimony and continue of the same opinion.

Rehearing denied.