No. 9593.

United States Court of Appeals
District of Columbia.

Argued Nov. 19, 1947.

Decided Jan. 12, 1948.

Mr. David G. Bress, of Washington, D. C., with whom Messrs. Alvin L. Newmyer and Alvin L. Newmyer, Jr., both of Washington, D. C., were on the brief, for appellant.

Mr. David A. Fegan, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and PRETTYMAN, Associate Justices.

GRONER, C. J.

This is an appeal from a judgment for plaintiff (appellee) on the verdict of a jury in a case of alleged malpractice. In our view the decision turns upon the question whether the jury were correctly instructed, and that question, we think, must be answered in the negative.

The facts, considered from the viewpoint most favorable to the plaintiff, are as follows:

Plaintiff, a former employee of the Government, is approximately seventy years of age. He has been in more or less delicate health since 1942 and has been wearing false teeth, including an upper and a partial lower denture, for the past twenty-six years. In 1943 he procured and wore a new set from a New York dentist and in 1944 some sharp points or prongs in the lower denture caused a puncture in his tongue. When he first observed the puncture it was about the size of a pinhead, and he suffered pain from this time until some two or three months later when he called on defendant (appellant), a Washington dentist. At that time (September, 1944) the lesion on his tongue showed no tendency of healing and was about the size of the phosphorous end of a match, and raw flesh could be seen through the puncture.

Plaintiff called the defendant dentist's attention to the condition of his tongue and expressed his own view that it was due to the faulty denture he was then wearing. Defendant concurred in this view and warned plaintiff to discontinue the use of the denture and agreed to provide a new set. Plaintiff's testimony is that defendant then assured him he could cure the tongue condition and gave him a prescription for an antiseptic wash known as "Metaphen," and advised plaintiff to use this on his tongue three times a day. Plaintiff asked the defendant if it would not be advisable for him to see a physician, but defendant replied he could do as much for him as any physician.

Plaintiff thereafter visited the dentist's office between the date of the first visit in September, 1944, and his final visit the following June, something like twenty-five times in connection with the various steps incident to fitting the new dentures. During all of this period the wound on plaintiff's tongue steadily increased in size until it was the width of the end of plaintiff's thumb.

The new lower denture prepared by defendant was found by the plaintiff to be too tight and to press on his tongue, and another new set was subsequently prepared. But during all of this time plaintiff's tongue wound spread until it had covered a large part of the tongue, and was in 1945 diagnosed as cancerous by Dr. Hunter, a pathologist.

Three physicians were called by plaintiff. The first, Dr. Kossow, a general practitioner, testified he knew about as much, and no more, on the subject of cancer as the average general practitioner in the District of Columbia. Plaintiff first visited Dr. Kossow in June 1945, for the purpose of having a general physical examination. In the course of the examination the physician noticed the lesion on plaintiff's tongue, which at that time extended from about the middle of the tongue back almost to the throat. The glands in plaintiff's neck had then become enlarged, and the doctor, suspecting the possibility of cancer, advised plaintiff to see Dr. Hunter for an examination of the tongue to determine definitely whether cancer was present. Dr. Kossow testified not only that he, personally, did not know whether the sore on plaintiff's tongue was cancerous, but that he did not know what caused the sore or the cancer.

After Dr. Hunter's report was made, Dr. Kossow estimated that the cancer probably had existed for at least a year. But he neither stated nor suggested that the sore, which had steadily grown and spread from its first observance to the period of the operation—more than a year later—was or was not cancerous in its inception. His testimony from beginning to end was a total disclaimer of any knowledge of when the cancer started or what caused it.

Dr. Hunter, the pathologist who diagnosed plaintiff's tongue as cancerous, likewise testified that he did not know what caused the cancer nor when the plaintiff's tongue had first become cancerous. He said the application of Metaphen, either diluted or in full strength, which defendant had prescribed, would ordinarily result in no deleterious effect.

Dr. Catlin, the final medical witness for plaintiff, is a cancer specialist, and it was he, after Dr. Hunter's report was made, who performed the operation on the glands of plaintiff's neck. In his deposition he was asked whether, from his own examination or from any manifestations of cancer that he observed, he could testify as to when or how the cancer originated. He replied in the negative. He was unwilling to say whether the cancer had existed ten years or a much shorter period, and testified that from his examination it was not possible to tell what the condition of the tongue was one year prior to the time he saw it. He was likewise asked whether, if the wound in the tongue was originally caused by a puncture from a sharp protruding object, it would have caused a cancerous condition, and he answered that he did not know, that the point was debatable. He was asked specifically whether he could tell the cause of the cancerous condition and he said he could not.

■ A careful search of the record discloses no word of testimony from any witness on which a jury could base a conclusion that the dental work done by defendant, some months after the tongue wound developed, was the responsible cause of plaintiff's cancer; and there is likewise not a word of evidence to show any causal connection between defendant's work in fitting and making the dentures and the cancerous condition. But the trial judge was of opinion that it was a matter for the jury to decide whether the defendant's treatment produced "friction to such an extent as to cause cancer." Accordingly he instructed the jury to decide whether the cancer was caused by defendant's negligent treatment or lack of proper treatment. And it is this instruction which we think was wrong. As we have shown, there is nothing in the evidence to prove that defendant's treatment or lack of treatment produced the cancer. In saying this we do not wish to be understood as holding that there was a lack of evidence to go to the jury on the question whether defendant's alleged assurance to plaintiff that he could treat the lacerated tongue condition as well as a physician was a contributing cause in the delay or discovery and spread of the cancer. Nor do we, at this time, express any

opinion on the weight to be given to the testimony that because the dentures prepared by defendant, long after the wound was observed, were uncomfortably tight they may have influenced the progress of the disease. All that we hold is that the record is wholly and entirely devoid of any evidence on which a jury could reach a conclusion that anything done by defendant actually caused plaintiff's cancer, and hence that in telling the jury they might find that defendant caused the cancer, the court erred. The rule which we invoke in this respect is particularly applicable where, as here, the subject matter of the controversy is the highly specialized subject of cancer, as to which laymen have no knowledge and as to which both court and jury must depend on expert evidence. When such evidence goes only so far as to show that the cancer might have resulted from any one of several causes, for only one of which defendant may be responsible, it fails to make out a case. Chicago, M. & St. P. Ry. Co. v. Voelker, 129 F. 522, 530, 70 L.R.A. 264; Ewing v. Goode, C.C., 78 F. 442.

Here, as we have seen, we have a case in which there is not a jot or tittle of evidence as to what caused the cancer. There is accordingly a total lack of evidence on which to base a conclusion that anything defendant did or failed to do produced that result. In such a case a jury may not speculate, and this is true even if it were shown that what defendant did might or might not have caused the cancer, for in such case the vital question would still be left wholly in the realm of conjecture. Falco's Case, 260 Mass. 74, 156 N.E. 691.

The final and decisive inquiry in this case, as in Falco's case, supra, is whether anything done by defendant, or the failure by him to do anything which he was in duty bound to do, produced the cancer. That, as the Massachusetts court said, is a question of fact, and not a matter of speculative conjecture. Clearly the case is one in which plaintiff must rely upon his medical evidence. And this, given its full force and effect, goes no farther than to show a possibility that irritation produced by defendant's dentures might have produced or spread the cancer. This is not enough and, as we have indicated above, leaves the question wholly to guess and speculation.

Reversed and remanded for a new trial.