### FURR v. HERZMARK.
No. 11536.

United States Court of Appeals District of Columbia Circuit.

Argued May 15, 1953.

Decided June 18, 1953.

Rehearing Denied July 29, 1953.

Mr. Joseph D. Bulman, Washington, D. C., with whom Messrs. Sidney M. Goldstein and Nathaniel Goldberg, Washington, D. C., were on the brief, for appellant.

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. William E. Stewart, Jr., and Julian H. Reis, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This appeal questions the action of the District Court in directing a verdict for the defendant at the conclusion of all the testimony. The issue was defendant's alleged negligence as a doctor in performing several operations upon the plaintiff and in the treatment associated with the operations. The basic operation was the removal from plaintiff's right leg of two inches of the femur to shorten the leg so as to bring it into better coordination with the left leg, which by reason of injuries in childhood had not grown to full length and usefulness. The discrepancy between the two legs had led to pains in the back and other difficulties which it was thought could be remedied in this manner.

This first operation was performed December 17, 1946. The defendant doctor used a drill with bit to bore holes in the bone to aid in the chiseling or cutting of the part to be removed and also to aid in the attachment by screws of a metal plate to

hold in alignment the segments joined after the removal. In the drilling a fragment of bit about a quarter of an inch in length broke off. It was left embedded in the femur. Aside from the question whether the operation should have been performed at all, this is the first basis for the claim of negligence. But we find no evidence of negligence which could properly have gone to the jury on the bit episode. Furthermore, there was no evidence of damage due either to breaking the bit or leaving it in the femur. The testimony was clearly to the effect that in the circumstances of the particular case it was better practice to leave the fragment where it was lodged than to risk weakening the bone by the cutting necessary to remove it. And although bone infection subsequently developed none of the testimony attributes any of it to the bit fragment. No sinus from the infection led to the fragment so as to relate it to the infection.

A metal plate with four screws was attached over the joinder to assist in holding together the two segments which had come into existence by the operation. The wound was closed and the leg from foot to waist was encased in a plaster of Paris cast. Pain developed. About 10 days after the operation an x-ray was taken, disclosing an angulation or outward bowing of the leg; that is, the segments of the femur were out of alignment. The cast was removed, the angulation corrected by manual manipulation and a new cast put on. X-rays, after these occurrences showed that a screw in the metal plate and the plate itself were loose. It also became obvious that a piece of bone had broken off on the inner side of the thigh probably as a consequence of chiseling done in the operation.

We lay aside for the moment the loose screw and plate so as to dispose at this point of any problem regarding this broken-off piece of bone. There was no evidence showing any injury or damage attributable to it. The fragment adjusted itself in a healthy manner as time went on, without injurious consequences. So, like the broken piece of bit, this aspect of the case called for no submission to the jury.

We return to the loose screw, loose plate and subsequent developments. Appellant was released from the hospital January 22, 1947. The loose conditions were shown by an x-ray made February 13, 1947. The joined segments had not then become firm. X-rays of April 17, 1947, and June 23, 1947, indicated a similar situation and it was concluded that some fibrous tissue, interposed between the segments, was preventing union. The patient had in May gone to Florida for four weeks. After his return a second operation was performed July 2, 1947. The four-screw plate was removed, the segments were separated, the edges of the wound were curetted or cleaned of the fibrous tissue, six new screw holes were drilled and a new six-screw plate was attached to the femur. Fever developed and was treated by penicillin. The defendant testified that infection is a usual cause of fever; and before the patient left the hospital the wound was known to be infected. Defendant concluded plaintiff was suffering from osteomyelitis, that is, bone infection. The area was drained. The temperature became normal and the patient was released from the hospital August 10, 1947, when defendant made a note that his condition was satisfactory but there was a slight infection at the lower end of the wound. Drainage continued. Later on a severe putrid odor accompanied the infection. In September plaintiff consulted two other doctors on appointments arranged by the defendant. The reports of these doctors were to the effect that the metal should be removed, the bone thoroughly cleaned and the wound permitted to heal from the inside out without being closed. The defendant, however, attempted what he described as a more conservative measure, the use of penicillin, to clear up the infection. But the infection and drainage continued. A third operation was performed October 31, 1947, during which the six-screw plate was removed, the area was cleansed of all overlying tissue, was washed out thoroughly with a saline solution, the bones were placed in alignment, and the wound was packed with vaseline gauze and sulfa powder and left open to drain and heal from the bottom up with-

out a plate and without screws. Over a period of time the infection cleared and the wound healed.

The leg remained in casts of various types or in braces for about 17 months, most of the time with the knee immobilized. As a result adhesions formed which seriously reduced the degree of flexion of the knee. In the effort to remedy this condition the plaintiff, on July 2, 1948, was given an anesthetic and defendant doctor broke the adhesions by a manual manipulation of the knee. X-rays showed a bony substance or fragment below the kneecap which plaintiff sought to prove was broken off from the patella or kneecap as a consequence of the manipulation coupled with the weakened condition of the kneebone structure due to long immobilization. We find no evidence, however, that any injurious consequences are attributable to this fragment even if there was an issue of fact as to its source. We further hold that there was no evidence creating a factual issue for the jury as to negligence in the manner in which the manipulation was performed.

The plaintiff in time recovered. In the end there was a generally satisfactory result from the operations. This, with the evidence as a whole, leads us to agree with the trial court that there was no issue of negligence for the jury to resolve arising from the original decision of defendant to undertake the basic operation.

[1] From the foregoing it will be seen that we are of the view that with respect to (1) breaking the bit and leaving the broken fragment where it became lodged, (2) the manner of performing the first manipulation in January 1947, (3) the manipulation to break the adhesions at the knee, (4) the presence of the bone fragment on the inner side of the femur and of a bony substance below the knee, and (5) the original decision to operate, no case against the defendant was made for jury consideration.

This leaves the question whether there was a factual issue of negligence to go to the jury by reason of (1) the angulation some few days after the first operation, (2) the presence of the loose screw and plate, (3) the relation of the foregoing factors to the performance of the second operation and the insertion then of a six-screw plate, and (4) the relation of all these factors to the bone infection and third operation when the plates and screws were removed. There is no explanation in the record of the original angulation or its cause, except of course the record shows the bones had been separated and did not stay joined after being placed together during the operation. This angulation and its correction were followed or accompanied by a loose screw and plate. A second operation was performed to insert a larger plate, requiring six additional screws in the bone, making a total of 11 holes, including the one which held the broken bit. While the testimony does not necessarily show negligence in these matters it is, we think, sufficient to raise an issue of fact in that regard for the jury. There was clear testimony that the presence of metal could have been an irritant which contributed to the infection which indisputably existed and continued after insertion of the six-screw plate. Medical opinion thereafter consulted raised a question as to the desirability of removing the metal in aid of curing the infection. An issue was presented whether, in this case, use of a metal plate should have continued so long. Assuming that it was good practice to use a plate in the first place, the angulation, loosening, substitution of a larger plate, and infection associated with the plate, made an issue of negligence to go to the jury on the original choice of size of the plate, the cause of the loosening, the consequences of changing plates, with additional holes, and the relation of these factors to the infection.

 In the present posture of the case the evidence must be viewed in the light most favorable to the plaintiff. Chambers v. Tobin, 1953, — U.S.App.D.C. —, 204 F.2d 732; Higashi v. Shifflett, 1952, 90 U.S.App. D.C. 302, 195 F.2d 784. See, also, Goodwin v. Hertzberg, 1952, 91 U.S.App.D.C. 385, 201 F.2d 204; and Crist v. White, 1933, 62 App.D.C. 269, 66 F.2d 795. The record contains much convincing evidence, the purport of which we do not doubt, that the defendant made diligent and good faith efforts to solve the problems presented. But the factors we have set forth, without fur-

ther explanation, would support an inference by the jury that defendant had not met the requisite standards of judgment and skill.[1] Sweeney v. Erving, 1910, 35 App. D.C. 57, 62, 43 L.R.A.,N.S., 734, judgment for defendant affirmed, 1913, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815; Crist v. White, supra; Grubb v. Groover, 1933, 62 App. D.C. 305, 67 F.2d 511, certiorari denied, 1934, 291 U.S. 660, 54 S.Ct. 377, 78 L.Ed. 1052; Weisenberg v. Hazen, 1934, 63 App. D.C. 398, 73 F.2d 318; Byrom v. Eastern Dispensary and Casualty Hospital, 1943, 78 U.S.App.D.C. 42, 136 F.2d 278.[2] And this question, in the circumstances of this case, need not be decided solely upon the basis of expert testimony. Byrom v. Eastern Dispensary and Casualty Hospital, supra; Christie v. Callahan, 1941, 75 U.S.App.D.C. 133, 124 F.2d 825; Goodwin v. Hertzberg, supra; Garfield Memorial Hospital v. Marshall, 1953, —— U.S.App.D.C. ——, 204 F.2d 721. If negligence is found, a matter for the jury to decide, there is ample evidence with respect to pain and suffering to carry the case to the jury on the question of damages.[3]

▉ From the foregoing it will be seen that on some aspects of the case, but not on others, there was evidence for the jury. In this situation it is necessary to remand, but we do not think it follows that the case must be retried *in toto*. While the complaint alleges negligence very generally, without separate specifications in separate counts or otherwise, there was no objection on the trial to proof respecting each of the matters we have enumerated. Rule 59(a), Fed.R.Civ.P., 28 U.S.C., provides that a new trial may be granted on all or part of the issues. In a sense the issue in the end is the single one of negligence, yet in fact this issue divides into several different issues, as we have seen from the history of the case as it developed on the trial. Applying the principle of Rule 59(a), therefore, we remand for a new trial only as to the several negligence issues which should have gone to the jury. Not only is the purpose of the Rule thus served but our power to grant this relief is ample under 28 U.S.C. § 2106 (Supp. V, 1952) which provides for remand for such further proceedings as may be just under the circumstances. We accordingly grant a new trial, but only as to those issues of negligence, hereinabove enumerated, and consequent damages, as to which we have held that there was an issue for the jury and as to which a directed verdict in favor of the defendant accordingly was not warranted.

1. In Sweeney v. Erving, infra, it is said: "It is well settled that the degree of skill and learning which a physician or surgeon is required to possess and exercise is that degree of skill and learning ordinarily possessed and exercised by members of his profession in the same line of practice in that locality. * * *" 35 App.D.C. at page 61.

2. Other cases on the general subject in this jurisdiction are here compiled, without particular application to the case at bar: Levy v. Vaughan, 1914, 42 App.D.C. 146, 153; Carson v. Jackson, 1922, 52 App. D.C. 51, 281 F. 411; Cayton v. English, 1927, 57 App.D.C. 324, 23 F.2d 745; Hazen v. Mullen, 1929, 59 App.D.C. 3, 32 F.2d 394; Wilson v. Borden, 1932, 61 App.D.C. 327, 62 F.2d 866, certiorari denied, 1933, 288 U.S. 615, 53 S.Ct. 506, 77 L.Ed. 988; Carr v. Shifflette, 1936, 65 App.D.C. 268, 82 F.2d 874; Hohenthal v. Smith, 1940, 72 App.D.C. 343, 114 F.2d 494; Rodgers v. Lawson, 1948, 83 U.S.App.D.C. 281, 170 F.2d 157; Teichmann v. Parrish, 1946, 81 U.S.App.D.C. 217, 157 F.2d 75; Winstead v. Hildenbrand, 1946, 81 U.S.App.D.C. 368, 159 F.2d 25; Kasmer v. Sternal, 1948, 83 U.S.App.D.C. 50, 165 F.2d 624; Chambers v. Tobin, supra.

3. While we hold as stated that the knee manipulation was not negligent and also that no case for the jury was made with respect to the bony substance below the knee, any pain, suffering or expense incident to the knee manipulation would be admissible as to damages should a case be made for the jury that the necessity of the manipulation itself, as distinct from the manner in which it was performed, grew out of the length of time the knee was immobilized and that this time period was due to those factors which we have said in the opinion should have been submitted to the jury on the question of negligence.

Reversed in part and remanded for further proceedings not inconsistent with this opinion.

On Petition for Rehearing

PER CURIAM.

On petition for rehearing appellee stresses that the points relied upon in our opinion were not urged either in the lower court or in appellant's brief on appeal. The evidence referred to in the opinion was before the trial court for its appraisal on the question of directing a verdict. Although in this court appellant's brief made detailed presentations only on aspects of the case which we found did not present issues for the jury, in addition appellant relied expressly, though generally, upon the entire body of evidence in urging that a verdict should not have been directed against him. Once we concluded that this contention was sound there was left the question whether the new trial to be authorized should be unrestricted or should not include the claims of negligence as to which we found the evidence did not make out a jury question on the first trial.

The petition for rehearing is denied.